# EXHIBIT 1

Jeremy S. Golden (SBN 228007)
Golden & Cardona-Loya, LLP
3130 Bonita Road, Suite 200B
Chula Vista, CA 91910
jeremy@goldencardona.com
Phone: 619-476-0030; Fax: 775-898-5471
Attorney for Claimants

## AMERICAN ARBITRATION ASOCIATION

| | |
|---|---|
| RICHARD BLAKER, an individual, and SAMANTHA BLAKER, an individual, | Case No.: 01-16-0003-2470 |
| Claimants, | **Claimants' Arbitration Hearing Brief** |
| v. | Date: August 3, 2017 |
| | Time: 9:00 a.m. |
| CREDIT ONE BANK, N.A, | Location: Deuprey & Associates, LLP |
| | First Ave, Suite 330 |
| Respondent. | San Diego, CA 92101 |
| | Arbitrator Dan Deuprey, Esq. |

## I.
## INTRODUCTION

Husband and wife Richard and Samantha Blaker filed this claim against Credit One Bank, N.A. for (1) violations of the California Rosenthal Act, Civil Code §1788 *et seq.* ("Rosenthal Act") which prohibits creditors from engaging in unlawful debt collection; (2) violation of the California Consumer Credit Reporting Agencies Act, Civil Code §1785.1 *et seq.* ("CCRAA") which prohibits unlawful credit reporting; (3) invasion of privacy and (4) violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*

//

1
Claimants' Arbitration Hearing Brief

## II.
## STATEMENT OF FACTS

### A. Background on the Accounts.

In May and July 2014 the Blakers obtained two credit cards with Credit One. One card was issued to Samantha Blaker with an account number ending in 3960, a credit limit of $700 and an interest rate of 23.9%. Ms. Blaker made charges on the card and paid the balance each month. The last charge on this card was December 7, 2014. By January 8, 2015 Ms. Blaker paid the card in full. In fact, Ms. Blaker overpaid and the account had a $.35 credit owed to her. The final statement issued on the account shows a $0 balance and $0 past due.

The other card was issued to Richard Blaker with an account number ending in 8880, a credit limit of $500 and an interest rate of 23.9%. Mr. Blaker made charges on the card and paid the balance each month. The last charge on this card was November 29, 2014. By December 18, 2014 Mr. Blaker paid the card in full. As with his wife Mr. Blaker overpaid and the account had a $49.99 credit owed to him. The final statement issued on the account shows a $0 balance and $0 past due.

### B. Cancellation of the Accounts.

In or around January 2015 after the cards had been paid in full, Ms. Blaker desired to cancel both cards. She first sought to cancel on-line. Credit One's website did not permit cancellation online. The Blakers then called Credit One and instructed them to cancel the cards. The representative said if she did not cancel at that time they would give her three months free. The Blakers declined this offer and requested cancellation.

Credit One did not cancel. In March 2015 Credit One charged a $19 fee on Mr. Blaker's account for placement of an "authorized user." This was never requested and invalid. At this time Credit One also began charging an annual fee of $8.25 per month. In successive months it added a late fee of $25 and interest. In July 2015 Credit One charged Ms. Blaker's account $8.25 for an annual fee. This fee and an additional late fee were charged in successive months.

The Blakers received notice that they were being charged these additional fees when

reviewing their statement. Ms. Blaker called Credit One and informed them that she had canceled her account and inquired as to the additional charges and fees. The representative said she could not cancel the card at this time as there was a balance due for the fees. The representative then said she could cancel the card if the Blakers paid the fee on the card. Despite not owing the fee, the Blakers agreed to pay the charges based on the representation that the accounts would then be canceled. This, however, still did not result in the cards being canceled.

In or around September 2015, when the Blakers noticed they were still being charged fees, they again tried to cancel. Ms. Blaker typed a letter stating that she has been trying to cancel the cards and requested they be canceled. Ms. Blaker included both credit cards in the envelope with the letter. She mailed the letter to the Credit One's address on its website: Credit One Bank, P.O. Box 98873, Las Vegas, NV 89193. Ms. Blaker attempted to send the letter certified mail return receipt requested or via Federal Express. She was informed it could not be sent in that manner as it was a PO Box. She then sent the letter and cards via regular mail.

Once again Credit One failed to cancel the accounts. It continued to increase the balance based on the various fees it charges its cardholders. According to Credit One's own records there were additional phone calls in December 2015 and January 2, 2016 where Ms. Blaker made additional requests to cancel the accounts.

C. **Background on Credit One**

Credit One is a bank specializing in issuing low credit-limit credit cards with high fees. It floods potential customers with direct mail and internet advertisements. The credit limit on the cards it issues is comparatively small and is often less than a thousand dollars. Credit One profits by tacking on various fees and charges to the consumer's account.

For example, Credit One will charge consumers upwards of $99 annually as a "membership fee." It charges additional fees for late payments and adding an authorized user. This makes it rather easy for Credit One to generate a balance quickly even if a consumer rarely uses the card.

After an account has defaulted Credit One uses a number of different outsource providers to make collection calls. Many of the calls are done through their agents, First Contact, iEnergizer, TPUSA, Convergent and EGS. Credit One closely supervises these agencies. It provides collection procedures to these vendors. Credit One communicates with representatives at these companies on a daily basis. The companies use an automatic dialing system to place calls. The companies represent that they are calling from Credit One.

**D.     Collection Calls.**

From at least June 2015 through February 2016 Credit One began a campaign of harassing collection calls to the Blakers. The calls were placed with an automated dialer machine to both of the Blakers' cell phones by Credit One and/or its agents. The calls were placed on successive days and multiple times each day.  On certain days Credit One called the Blakers fifteen times. From February 1 through February 19, 2016 Credit One called the Blakers two-hundred-and-forty-seven (247) times.

Ms. Blaker repeatedly explained to Credit One that the charges were not valid and they owe nothing. Ms. Blaker requested that the calls stop and informed Credit One the cards were canceled. Credit One ignored her explanations and requests and continued to call.

**E.     Credit Reporting.**

Credit One reported derogatory information to both of the Blakers' credit files. Credit One reported a delinquency in their payments for the months of December 2015 through February 2016. The negative reporting was submitted to Experian, Trans Union and Equifax. The reporting indicated the account was a "Late Account." This information was incorrect as the Blakers had closed the accounts and no further balance was owed.  As a result of Credit One's conduct, the Blakers suffered damage to their credit worthiness at a time when they were attempting to refinance their home. The harm to the credit also was a cause of worry, concern, stress and frustration.

**F.     The Cross-Claim.**

Credit One filed a cross-claim against the Blakers to collect an alleged balance on the accounts. However, Credit One stated at various times and in multiple methods that no

balance is owed. On February 25, 2016 Credit One sent a letter to Mr. Blaker from the Office of the President that it has updated his account to reflect "Closed/Zero Balance." The letter further stated a "systematic Payoff Wavier was processed in the amount of $148.47, which brought your account balance to zero." Further statements in the letter claimed, "As of the date of this letter, your account is closed with a zero balance." The on-line statements accessible through Credit One's website also show that the account has a $0 balance. The final statements on both accounts produced by Credit One in discovery show $0 is owed and $0 is past due.

## III.
## LEGAL CLAIMS

**A.   Credit One Violated the Rosenthal Act.**

   1.   <u>Credit One's Violations of the Rosenthal Act.</u>

The Rosenthal Act regulates the actions of creditors attempting to collect debts from consumers. Civil Code §1788.17 sets forth that any violation of the federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692 *et. seq.* constitutes a violation of the Rosenthal Act. The Rosenthal Act "incorporated by reference the text of certain federal provisions [of the FDCPA] into the [Rosenthal Act], rather than copying them verbatim into the California code." *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004). In other words, if Credit One violated a provision of the FDCPA it must be found liable for a violation of the Rosenthal Act.

   2.   <u>Credit One Violated Civil Code §§1788.11(d)-(e) and 15 U.S.C. §1692d, 1692d(5) By Placing Excessive Calls.</u>

Credit One's frequent calls to collect the alleged balanced violated Civil Code §§1788.11(d) & (e) which prohibit causing a phone to ring repeatedly or be harassment under the circumstances. Similarly, the high volume of collection calls violated Civ. Code §1788.17 which incorporates by reference 15 U.S.C. §§1692d and 1692d(5). These sections prohibit harassment and causing a phone to ring repeatedly to annoy. Credit One's own records show up to fifteen calls per day. Multiple collection calls constitute harassment;

even if unanswered. The making of frequent calls itself can constitute actionable harassment under the Rosenthal Act (Civ. Code, § 1788.11, subd. (e); *Komarova v. National Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 345 (2009) (repeated unanswered calls; sufficient to state a claim) and the FDCPA (15 U.S.C §1692d(5); *Green v. Creditor Iustus Remedium*, 2013 U.S. Dist. Lexis 161298 (E.D. Cal., Nov. 12, 2013) (repeated unanswered calls; sufficient to state a claim); and *Fashakin v. Nextel Communications*, 2009 WL 790350, at *7 (E.D.N.Y. March 25, 2009) (finding six calls in seven-day period where some went unanswered, or no message was left, was sufficient enough to constitute harassing behavior); and see also *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370, 376 (N.D.Tex.1986), aff'd, 823 F.2d 880 (5th Cir.1987) (finding harassment where debt collector made as many as four or five telephone calls to the same debtor in one day.).

        3.    <u>Credit One Violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f and 1692f(1) By Repeatedly Claiming an Amount was Owed.</u>

Credit One violated 15 U.S.C. §1692e which prohibits the use of "false, deceptive or misleading representations in connection with the collection of a debt." Credit One repeatedly stated a balance was due on the accounts after they were canceled.

Credit One violated 15 U.S.C. §1692e(2)(A) which prohibits "giving the false impression of the character, amount or legal status of the alleged debt." Credit One repeatedly tried to collect on a debt that was not owed. This conduct also violated 15 U.S.C. §1692f(1) which prohibits "attempting to collect an amount not authorized by the agreement that created the debt or permitted by law."

Credit One violated 15 U.S.C. §1692e(8) by "communicating or threatening to communicate credit information which is known or which should be known to be false, including the failure to communicate that a dispute debt is disputed." Credit One reported that the account was past due.

Credit One violated 15 U.S.C. §1692f by "using unfair or unconscionable means to collect or attempt to collect a debt." Credit One's continual insistence on payment of the invalid debt was an unfair and unconscionable means to collect a debt. It is especially

unconscionable when viewed in light of the facts that the Blakers canceled the accounts and fees continued to be assessed.

  4. <u>The Blakers Are Entitled to Damages for Violations of the Rosenthal Act.</u>

  The Rosenthal Act is a strict liability statute and therefore does not require a showing of intentional conduct on the part of a debt collector. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (analysis under the parallel federal statute, the FDCPA).

  A plaintiff may recover statutory damages of no less than $100 to $1,000 for a violation of the Rosenthal Act. Civ. Code §1788.30(b). In addition to statutory damages, a plaintiff may also recover actual damages as well. Civ. Code §1788.30(a). In California, actual damages include non-quantifiable general damages for emotional distress. *Walnut Creek Manor v. Fair Employment & Housing Com.*, 54 Cal.3d 245, 255 (1991) *citing* to *Hess v. Fair Employment and Housing Com.*, 138 Cal.App.3d 232, 237 (1982).

  In a similarly worded federal statute, the Ninth Circuit has held that "actual damages" under the Fair Credit Reporting Act ("FCRA") includes recovery for emotional distress and humiliation. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

  The Supreme Court and Ninth Circuit have also defined the standard for recovery of emotional distress damages. See *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) ("Zhang's testimony alone is enough to substantiate the jury's award for emotional distress damages"); and *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir.1985) (upholding emotional damages based solely on testimony).

  Courts in California confirmed that emotional distress damages may be awarded for violations of the Rosenthal Act. In *Komarova, supra*, a jury awarded $197,905 in damages for the violations of the Rosenthal Act; $2,905 in economic loss, and $195,000 for noneconomic loss. The jury further awarded plaintiff punitive damages of $75,000. There is no requirement that the plaintiff in a case be required to prove the elements of Intentional Infliction of Emotional Distress. Nevertheless, Credit One's conduct was outrageous.

  Attorneys' fees and costs are also recoverable. Civ. Code §1788.30(c).

//

### B.  Credit One Violated the CCRAA.

"It has been said that bad credit is like a 'Scarlet Letter.'" *FTC v. Gill*, 265 F.3d 944, 947 (9th Cir. 2001).   Credit One's reporting of a past due balance on the accounts despite the Blakers' disputes caused significant damages. The Blakers are entitled to be compensated for the damage and receive a statutory penalty.

#### 1.  Credit One's Violations of the CCRAA.

The CCRAA states "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Civ. Code §1785.25(a).  Credit One reported to all three credit bureaus that the Blakers' accounts were past due.  All of this information was inaccurate as the Blakers owed no balance. They paid their accounts in full and canceled.

The CCRAA has a federal statutory counterpart known as the Fair Credit Reporting Act ("FCRA"). Courts "operate under the assumption that California courts would interpret the FCRA and CCRAA consistently." *Carvalho v. Equifax Info. Servs.*, 629 F.3d 876, 890 (9th Cir. 2010).

Credit One failed to meet its obligation under law by submitting information that was inaccurate. *Saunders v. Branch Banking And Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008).  The information regarding the account was misleading. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding information in consumer report "may be deemed `inaccurate' if the statement is presented in such a way that it creates a misleading impression"); and *Carvalho*, 629 F.3d at 889-91 (holding information is "incomplete or inaccurate" if it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions").

#### 2.  The Blakers Are Entitled To Damages for Violations of the CCRAA.

The CCRAA sets forth the allowable damages per code. Civ. Code §1785.31(a). It states a claimant is entitled to "actual damages, including court costs, loss of wages, attorney's fees and, when applicable, pain and suffering" for a negligent violation. Civ. Code §1785.31(a)(1). For a willful violation, the Blakers can additionally recover "punitive

damages of not less than one hundred ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper." Civ. Code §1785.31(a)(2). Thus, the Blakers can receive a statutory penalty of up to $5,000 for each month it reported the wrongful information.

The Blakers are entitled to be compensated for damages due to loss of credit opportunity. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719-20 (3d Cir. 2010). They can recover damages for credit defamation. *Dalton v. Capital Assoc.*, 257 F.3d 409, 418-19 (4th Cir. 2001). Economic or financial loss is also recoverable. *Guimond v. Trans Union*, 45 F.3d 1329, 1333 (9th Cir. 1995). Finally, the Blakers are entitled to recover damages for emotional distress. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719-20 (3d Cir. 2010); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225-27 (3d Cir. 1997) (actual damages may be emotional in nature); and *Guimond v. Trans Union*, 45 F.3d 1329, 1333 (9th Cir. 1995).

> "Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011).

The Blakers should be fully compensated for their emotional distress. Recent cases similar set a guidepost. In *Bach v. First Union Nat'l Bank*, 486 F.3d 150 (6th Cir. 2007), the court upheld a jury award of $400,000 for compensatory damages in a case that involved attempts to resolve reporting inaccuracies and repeated denials of credit. In *Brim v. Midland Credit Management*, 795 F.Supp.2d 1255 (N.D. Ala. 2011) the court upheld awards of

$100,000 in compensatory damages and $623,000 in punitive damages for a case involving wrongful credit reporting by a collection agency. Similarly, in the case of *Sloane v. Equifax Information Services*, 510 F.3d 495 (4th Cir. 2007) the Fourth Circuit approved an award of emotional distress damages of $150,000 for credit reporting violations.

**C.    Credit One Is Liable For Invasion of Privacy.**

Ninth Circuit Courts recognize an invasion of privacy claim based on debt collection calls. "In California, '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Fausto v. Credigy Services Corp.*, 598 F.Supp.2d 1049, 1056 (N.D. Cal. 2009) quoting *Deteresa v. Am. Broad.Cos., Inc.*, 121 F.3d 460, 465 (9th Cir.1997). "Courts have held that 'repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion.'" *Fausto*, 598 F. Supp. 2d at 1056; and *Joseph v. J.J. Mac Intyre Companies, LLC*, 281 F.Supp.2d 1156, 1167(N.D. Cal. 2003), 238 F. Supp. 2d at 1169-1170. The frequent calls greatly interfered with the Blakers' right to privacy. Credit One's recordings show that Ms. Blaker was disturbed by the calls. The calls proceeded to come nevertheless.

**E.    Credit One Violated the TCPA.**

1.    <u>Violation of the TCPA</u>

The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), prohibits any person, absent the prior express consent of a telephone-call recipient, from "mak[ing] any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service [or] cellular telephone service." Credit One's agents placed calls using an autodialer to the Blaker's cell phones. The TCPA applies whether or not the call was answered. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); and *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 271 (3rd Cir. 2013).

A call recording has Ms. Blaker stating that if you are not in the United States do not continue to call. This conversation took place in December as a later recording took place at

the latest on January 2, 2016. In the January 2, 2016 Ms. Blaker further stated that she did not owe anything and again requested her account be canceled. In other calls Ms. Blaker told Credit One to stop calling. She repeatedly told the representatives that the accounts were canceled.

Ms. Blaker revoked any alleged consent to receive calls in these conversations. The TCPA allows consumers to revoke their prior express consent to automated calls; they may do so orally or in writing. *Osorio v. State Farm Bank, FSB* (11th Cir. 2014) 746 F.3d 1242, 1255-1256 (denying summary judgment where plaintiff alleged that he twice told State Farm to "stop calling" him); *Gager v. Dell Financial Services, LLC* (3rd Cir. 2013) 727 F.3d 265, 271; *Reardon v. Uber Technologies, Inc.* (N.D.Cal. July 19, 2015) 2015 WL 4451209, at *10, citing In re Rules and Regulations Implementing the TCPA of 1991, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, ¶¶55, 64 (released Jul. 10, 2015); *Beal v. Wyndham Vacation Resorts, Inc.* (W.D.Wisc. June 20, 2013) 956 F.Supp.2d 962, 977; *Gutierrez v. Barclays Group* (S.D.Cal. Feb. 9, 2011) 2011 WL 579238, *3-4 and *Adamcik v. Credit Control Services, Inc.* (W.D.Tex. Dec. 19, 2011) 832 F.Supp.2d 744, 749-753.

    2.    <u>Amount of Calls and Relief Sought.</u>

After January 2, 2016 there were two-hundred and fifty-eight (258) calls with an autodialer to the Blakers' cell phones. The Blakers are entitled to statutory damages of $500 per telephone call and up to $1,500 per call, pursuant to 47 U.S.C. §227(b)(3) if the calls were done willfully or knowingly. The evidence shows that the calls continued despite the request. This rises to the level of willful or knowing.

Although neither the TCPA nor the FCC regulations define the terms "willfully or knowingly," the Supreme Court has generally interpreted willfulness to imply only that an action was intentional. *Smith v. Wade*, 461 U.S. 30, 41 n.8 (1983). And, "while the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." *Roylance v. ALG*

*Real Estate Servs.*, 2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2013). The trebling of damages under the TCPA for a willful violation is the trend among courts and arbitrators. *Harris v. World Fin. Network Nat'l Bank*, 867 F.Supp.2d 888 (E.D.Mi. 2012).

The TCPA is a strict liability statute and has no bona fide error defense. *Alea London Ltd. v. Home Servs.*, 638 F.3d 768, 776 (11th Cir. 2011). Courts specifically reject the notion of common law affirmative defenses in the context of the TCPA. *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 761 (N.D.Ill. 2011). The fact that there is no failure to mitigate damages, assumption of the risk, or bona fide error defense enumerated in the statute means that no such defenses exists. *Id.*

The Blakers are entitled to $1,500 for each of the two-hundred and fifty-eight calls that were placed after consent was revoked and the accounts were canceled. The Blakers should be awarded $387,000 for violations of the TCPA.

**D.   Credit One's Counterclaim Should Be Denied.**

Following the filing of this arbitration claim, Credit One included a counterclaim in its answer. It has not identified what the alleged balance is it is seeking to collect. Credit One stated in letters, its own account statements, its online account portal and on more recent credit reporting profiles that nothing is owed. Credit One's attempt to collect the charges and fees after the accounts were canceled is invalid. The counterclaim was filed in retaliation. The counterclaim should be denied. Credit One's own records show that on both accounts the final balance is $0 and $0 is owed.

## IV.
## CONCLUSION

Credit One violated a strict liability consumer protection statute its attempts to collect an illegitimate debt. It also wrongfully reported negative information to the Blakers' credit file and invaded their privacy while attempting to collect. The hundreds of collection calls were unwarranted and illegal. These violations caused the Blakers economic damages and emotional distress. As a result of these actions an award should be entered in favor of the Blakers against Credit One.

Date: July 27, 2017         *s/ Jeremy S. Golden*
                            Jeremy S. Golden,
                            Attorney for Claimants